## NATIONAL LABOR RELATIONS BOARD v. PARKERS PRAIRIE COOPERATIVE CREAMERY ASS'N.

No. 13204.

Circuit Court of Appeals, Eighth Circuit.

April 8, 1946.

456

Keith W. Blinn, Attorney; National Labor Relations Board, of Saint Louis, Mo. (David A. Morse, General Counsel, National Labor Relations Board, A. Norman Somers, Assistant General Counsel, National Labor Relations Board, and Joseph B. Robison, and Thomas B. Sweeney, Attorneys, National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

Dell & Rosengren, of Fergus Falls, Minn., for respondent.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This case is before this Court upon a petition of the National Labor Relations Board, filed pursuant to § 10(e) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq., for enforcement of an order issued by the Board against the respondent on June 22, 1945. 62 N.L. R.B. 711.

The respondent, as its name implies, is a cooperative creamery association, located in the village of Parkers Prairie, Minnesota, and engaged principally in the manufacture and sale of butter, a large part of which is sold in interstate commerce. Respondent also maintains a meat-processing and locker service for its patrons. It is an incorporated, nonprofit organization, and any surplus derived from its business is distributed to its patrons. It employs eight workers in its creamery and four in its locker department.

Upon an amended charge filed October 11, 1944, by International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union No. 329, the National Labor Relations Board issued a complaint against the respondent, charging that it had engaged, and was engaging

in, unfair labor practices affecting commerce within the meaning of § 8(1) and (3) and § 2(6) and (7) of the National Labor Relations Act. In substance, the complaint alleged that respondent, on or about August 31, 1944, discharged, and has since refused to reinstate, two of its employees, Glen Angell and Arthur Christensen, for joining and assisting the Union, and that respondent, from on or about August 1, 1944, had warned its employees against affiliation with or activities on behalf of the Union, had questioned them about their union activities, and had made disparaging and derogatory remarks about the Union.

In its answer to the complaint of the Board, 'the respondent admitted the discharge of, and refusal to reinstate, Angell and Christensen, but asserted that they "were discharged for a lawful and justifiable reason in that said employees were improperly performing 'their services as employees of said Creamery, were creating dissension among .their fellow workers, were improperly conducting themselves toward the patrons, officers and directors of said Creamery, and were interfering with the welfare and progress of the Company and its business." Respondent denied all the other allegations of the complaint.

A hearing was held on October 26 to 28, 1944, at Parkers Prairie, before a Trial Examiner appointed by the Board. Evidence was taken upon the issues raised by the complaint and the answer. In his intermediate report, dated December 8, 1944, the Trial Examiner found that respondent had engaged in the unfair labor practices charged in the complaint. The respondent filed exceptions to the intermediate report of the Trial Examiner. The Board overruled respondent's exceptions. The findings of the Board conformed to those of the Trial Examiner. The Board entered an order which, in substance, required respondent to cease and desist from the unfair labor practices in which it was found to have been engaged, to reinstate, with back pay, the employees found to have been discriminatorily discharged, and to post appropriate notices.

The Board has petitioned this Court for enforcement of the order. The respondent has filed an answer to the petition, denying that it had engaged in unfair labor practices as charged by the Board, and asserting that the findings and conclusions of the Board are not supported by substantial evidence.

In their brief, counsel for respondent, in speaking of its directors, explain the resistance of respondent to the enforcement of the order of the Board, as follows:

"They [the directors] are far removed from the ordinary labor troubles which appear in the industrial centers. They are laymen unfamiliar with the vast amount of administrative and quasi-administrative law now affecting business and employer-employee relationships. As such, they cannot conceive that justice is accomplished in a proceeding brought before a Board where the Board is the nominal prosecutor, a representative of the Board is prosecuting counsel, and an appointee of the Board is the Trial Examiner acting in the capacity of a judge, and the first appeal is determined by the Board itself. They cannot understand why the testimony of two discharged employees is accepted as wholly credible and their testimony is rejected as not credible. They are vehemently positive in their own minds that they have not knowingly or unknowingly violated the rules and regulations of the National Labor Relations Board and of the National Labor Relations Act. They still vehemently assert that they did not discharge the two named employees because of Unon activities.

"Over the insistent advice to the contrary of their counsel they have demanded that the petition of the National Labor Relations Board in these proceedings be opposed to the end that the record before the Trial Examiner be presented to a court for final determination.

"We are not making this prefatory statement with any intention of minimizing or reflecting upon the merits of their position. We relate the same to show that the matter is presented in their behalf to this Court in sincere and honest good faith."

Without questioning the good faith and sincerity of respondent's directors, it is apparent that they have a misconception of the powers and functions of this Court upon review of an order of the National Labor Relations Board. In National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 365, 85 L.Ed. 368, the Supreme Court said: " * * * As we stated in National Labor Relations Board v. Waterman Steamship Corporation, supra, 309 U.S. [206], at pages 208, 209, 60 S.Ct. [493], 84 L.Ed. 704: ' * * * Congress has left questions of law which arise before the Board—but not more—ultimately to the traditional review of the judiciary. Not by accident, but in line with a general policy, Congress has deemed it wise to entrust the finding of facts to these specialized agencies. It is essential that courts regard this division of responsibility which Congress as a matter of policy has embodied in the very statute from which the Court of Appeals derived its jurisdiction to act.' Congress entrusted the Board, not the courts, with the power to draw inferences from the facts. National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 576, 82 L. Ed. 831, 115 A.L.R. 307; National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 461, 60 S.Ct. 307, 311, 84 L.Ed. 396. The Board, like other expert agencies dealing with specialized fields (see Rochester Telephone Corporation v. United States, 307 U.S. 125, 146, 59 S.Ct. 754, 764, 83 L. Ed. 1147; Swayne & Hoyt v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L. Ed. 659) has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony."

The only function of this Court in a case such as this is to determine whether the Board, acting within the compass of its power, (1) has held a proper hearing, (2) has made findings based upon substantial evidence, and (3) has ordered an appropriate remedy. National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 342, 60 S.Ct. 918, 84 L.Ed. 1226; Eagle-Picher Mining & Smelting Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 903, 907. There is in this case no question of lack of procedural due process. The evidence of the Board's witnesses unquestionably supports its findings, which are therefore binding upon this Court. That the evidence of the respondent would have supported contrary findings is of no help to it. National Labor Relations Board v. Nevada Consolidated Copper Corporation, 316 U.S. 105, 62 S.Ct. 960, 86 L.Ed. 1305.

The respondent contends that the provisions of the Board's order are "too drastic and all-inclusive." This contention apparently seeks to raise the question whether the Board, under the evidence, was warranted in requiring the respondent to cease and desist from "in any other manner interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, * * *." See and compare May Department Stores Co. v. National Labor Relations Board, 66 S.Ct. 203, 210–213. This broad provision of the Board's

order was based upon a recommendation in the intermediate report of the Trial Examiner to the Board to which no exception was taken by the respondent in the proceedings before the Board. The provision, regardless of what we may think of its propriety, is not subject to modification by this Court. National Labor Relations Board v. Cheney California Lumber Co., 66 S.Ct. 553.

The petition of the Board for enforcement of its order must be and is granted.