JIM CAUSLEY PONTIAC, DIVISION JIM CAUSLEY, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1737.

United States Court of Appeals, Sixth Circuit.

April 15, 1982.

Harry A. Carson, Thomas E. Reiss, McClintock, Donovan, Carson & Roach, Thomas E. Reiss, Donovan, Hammond, Carson, Ziegelman, Roach & Sotiroff, Detroit, Mich., for petitioner.

Elliott Moore, John H. Ferguson, Peter Winkler, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D. C., for respondent.

Before BROWN and KENNEDY, Circuit Judges, and CECIL, Senior Circuit Judge.

ORDER

CORNELIA G. KENNEDY, Circuit Judge.

Jim Causley Pontiac ("Causley") petitions to have the Board's order following a remand by this Court set aside. The Board cross-appeals for enforcement. For the reasons stated herein, we again deny enforcement of the Board's order and remand the case to the Board for still further proceedings.

The facts are set forth in our earlier decision, *Jim Causley Pontiac v. N.L.R.B.*, 620 F.2d 122 (1980). We held that there was substantial evidence to support the Board's conclusion that Wittbrodt had engaged in protected concerted activity. We rejected *Alleluia Cushion's* doctrine of a presumption of "concertedness" when employees petition for correction of health and safety laws. 221 N.L.R.B. 999 (1975). This Court also found that the evidence was sufficient to permit the inference drawn by the Board that Causley knew it was Wittbrodt who filed the MiOSHA complaint and thus that his subsequent firing was retaliatory and unjustified. However, the Board

had made no finding as to whether Causley had knowledge that Wittbrodt's activities were on behalf of others. We thus remanded the case to the Board to make a specific finding on this question of Causley's knowledge of the "concertedness" of Wittbrodt's activities in his complaint to MiOSHA. It "is the employer's knowledge of an employee's protected activity and his subsequent discharge . . . which violates the Act." *Causley, supra,* at 125, *citing Air Surrey Corp. v. N.L.R.B.,* 601 F.2d 256, 257 (6th Cir. 1979). The employer must know "that the complaining employee is actually representing the view of other employees." *Id.* at 126 n.7.

On remand, the Board did not hold additional hearings. Instead, it relied on the evidence already submitted and concluded that Causley had "knowledge or reason to know" of the "concertedness" of Wittbrodt's actions. The Board relied on several indicia. First, the MiOSHA investigation form specifically identified the area of the shop where Wittbrodt and Chiotti worked, listed their job descriptions, and ended with the complaint that "*we* are having headaches every day from working here" (emphasis added). Secondly, the Board relied on the company's knowledge of complaints from other workers about the working conditions and thus knew or should have known that the MiOSHA complaint was on behalf of a group of employees, not Wittbrodt alone. It is this decision of the Board that Causley appeals. Causley claims that it was improper for the Board to find on the basis of the evidence adduced that it had knowledge of the "concertedness" of Wittbrodt's activities. Furthermore, Causley claims that even if the evidence could support such a finding, the Board applied an improper standard in evaluating whether Causley in fact had the requisite knowledge.

There are two distinct analyses which must be made in cases such as these. First, it must be determined whether the employee's actions were in reality concerted. That is an analysis wholly separate from the issue of the employer's knowledge of the concerted nature of the actions. The latter is the second issue which must be addressed by the Board. Here, the first issue was resolved in the original decision by this Court where we affirmed the finding of the Board that Wittbrodt's action in complaining to MiOSHA was *in fact* concerted action on behalf of himself and Chiotti. The issue in the instant case is whether the Board has found that the employer, Causley, *knew* that Wittbrodt's actions were on behalf of others and, if so, is that finding supported by the evidence.

While we earlier found that the only evidence of *actual* concertedness was the MiOSHA letter sent by Wittbrodt and Chiotti, the Board may consider all of the evidence before it in determining whether there was *knowledge* of "concertedness" in the making of this complaint.

■ Causley argues that it is improper for the Board to utilize the MiOSHA complaint form as evidence of "concertedness" since MiOSHA purposefully alters these forms to protect the identities of the complaining parties. Causley asserts that the Board can thereby manufacture "concertedness" by always rewording health and safety complaints in the plural. There are a number of problems with this argument. First, there is no evidence that Causley's president was aware that the MiOSHA complaint forms were altered. Second, the complaint form accurately reflected the letter that Wittbrodt and Chiotti sent to MiOSHA. Finally, even if a complaint form overstates the number of complaining employees, the Board is only able to "manufacture" the employer's *knowledge* of "concertedness." The *fact* of "concertedness" must still be found. Hence, we conclude that it is proper, under the circumstances of this case, for the Board to consider the MiOSHA complaint form received by Causley on the day of Wittbrodt's firing in considering whether Causley had knowledge that Wittbrodt's activities were on behalf of other employees in addition to himself.

■ The Board, however, has again applied the wrong standard in holding that Causley had knowledge of concertedness. It held that it was sufficient if Causley

"*knew or should have known*" that Wittbrodt's actions were concerted (emphasis supplied). Counsel for the Board suggests that this is a substitute for finding by a preponderance of the evidence (more likely so than not so) that Causley knew the concerted nature of Wittbrodt's actions, an acceptable standard. It seems likelier that the Board found that even if Causley did not know, it was negligent in not knowing. The Board cannot predicate liability on a negligence standard since the purpose of the Act is to protect concerted activity not punish employer ignorance. While it is true that the Board can find knowledge by inference, it is impossible to decipher if that is in fact what the Board did here. *See, e.g., A to Z Portion Meats, Inc. v. N.L.R.B.*, 643 F.2d 390, 393 (6th Cir. 1981) (Board can meet its burden of proving employer knowledge of "concertedness" by "infer[ring] knowledge when that inference is drawn from substantial evidence."); *N.L.R.B. v. Long Island Airport Limousine Serv. Corp.*, 468 F.2d 292 (2d Cir. 1972); *Hugh H. Wilson Corporation v. N.L.R.B.*, 414 F.2d 1345, 1355 (3d Cir. 1969), *cert. denied*, 397 U.S. 935, 90 S.Ct. 943, 25 L.Ed.2d 115 (1970); *N.L.R.B. v. Guernsey-Muskingum Electric Co-op, Inc.*, 285 F.2d 8 (6th Cir. 1960).

Were only the Board involved here we could simply deny enforcement for failure to comply with our directive on the previous remand. However, since an employee's rights are also involved and since he should not be penalized for the failure of the Board, we once again deny enforcement of the Board's order but remand for a finding of whether Causley knew of the concerted nature of the MiOSHA complaint.